UNITED STATES DISTRICT COURT
EASTERN DISCTRICT OF NEW YORK

Civil Action #:

------------------------------------------------------------- X

KHURRAM SHAHZAD,

      Plaintiff,

CV 13 - 2268

-against-

Feuerstein, J.

WALL M.J.

THE COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, SERGEANT DAVID VEVERKA,
SHIELD # 1495, POLICE OFFICER DAVID TAIT, SHIELD
#01471, SERGEANT BURTON A. FRIED, DETETIVE THOMAS
STORZ, DETECTIVE JASON PINSKY, SHIELD # 7908
OF THE FORENSIC EVIDENCE BUREAU, NASSAU
COUNTY DISTRICT ATTORNEY KATHLEEN RICE,
ASSISTANT DISTRICT ATTORNEY PATRICK J. FINLEY,
COMMISSIONER FORD, CORPORAL HARDY,
CORRECTION OFFICER DALEY and OFFICERS
OF THE NASSAU COUNTY SHERIFFS DEPARTMENT
CORRECTIONS DIVISION,

      Defendants,

------------------------------------------------------------- X

# COMPLAINT

ANDREW C.LAUFER
Law Office of Andrew C. Laufer, PLLC
255 West 36th Street, Suite 1104
New York, New York 10018
(212)422-1020(Phone)
(212)422 1069(Fax)
E-mail:

*Attorney for the Plaintiff*

# TABLE OF CONTENTS

*Page*

NATURE OF ACTION ------------------------------------------------------------------------------1

JURISDICTION, VENUE, and CONDITIONS PRECEDENT ------------------------------------ 6

THE PARTIES --------------------------------------------------------------------------------------------7

ALLEGATIONS COMMON TO ALL CAUSES OF ACTION-------------------------------------13

    A.    The Alleged Crime and the Initial Investigation-----------------------------------13

    B.    Plaintiffs Arrest and Indictment--------------------------------------------------14

    C.    Plaintiffs Criminal Trial-----------------------------------------------------------15

        1.    Police Officer David Veverka ------------------------------------17

        2.    Police Officer David J. Tait --------------------------------------18

        3.    Detective Thomas Storz -------------------------------------------19

        4.    Detective Jason Pinsky --------------------------------------------19

    D.    Plaintiff's Conviction, Sentencing and Motion -------------------------------20

    E.    Information Wrongfully Withheld -----------------------------------------------21

    F.    Plaintiff's Incarceration ----------------------------------------------------------21

    G.    Plaintiffs Damages and Injuries ------------------------------------------------23

FIRST CAUSE OF ACTION
    (Malicious Prosecution under State Law; Defendants NASSAU COUNTY,
    NCPD, VEVERKA, TAIT, FRIED, STORZ, PINSKY, RICE and FINLEY)-----------24

SECOND CAUSE OF ACTION
    (Intentional Infliction of Emotional Distress under State Law; All Defendants)--------24

THIRD CAUSE OF ACTION
    (Abuse of Process under State Law; Defendants NCPD, VEVERKA, TAIT,
    FRIED, STORZ, PINSKY RICE and FINLEY) -----------------------------------------26

FOURTH CAUSE OF ACTION
(Actual and Constructive Fraud under State Law; Defendants NCPD, VEVERKA,
TAIT, FRIED, STORZ and PINSKY) -------------------------------------------------------27

FIFTH CAUSE OF ACTION
(Negligent Misrepresentation under State Law; Defendants NASSAU COUNTY,
NCPD, VEVERKA, TAIT, FRIED, STORZ, PINSKY, RICE and FINLEY) ----------29

SIXTH CAUSE OF ACTION
(42 U.S.C. § 1983; Denial of Due Process and A Fair Trial under the Fifth, Sixth
And Fourteenth Amendments; Malicious Prosecution and Deprivation of Liberty
Under the Fourth and Fourteenth Amendments; Defendants NCPD, VEVERKA,
TAIT, FRIED, STORZ and PINSKY)-------------------------------------------------------30

SEVENTH CAUSE OF ACTION
(42 U.S.C. §1983; Denial of Due Process and A Fair Trial Under the Fifth, Sixth
And Fourteenth Amendments; Malicious Prosecution, Abuse of Process, and
Deprivation of Liberty Under the Fourth, Fifth, Sixth, and Fourteenth Amendments;
Defendants NCPD, VEVERKA, TAIT, FRIED, STORZ and PINSKY)--------------------32

EIGHTH CAUSE OF ACTION
(42 U.S.C. §1983; Conspiracy, All Defendants)--------------------------------------------35

NINTH CAUSE OF ACTION
(42 U.S.C. §1983; Freedom from Unreasonable Excessive Force, Failure to protect
while in Custody, Failure to Intercede and Conspiracy with Racial Animus;
Defendants NASSAU COUNTY, FORD, HARDY, DALEY AND
NCSDCD)-------------------------------------------------------------------------------------36

TENTH CAUSE OF ACTION
(42 U.S.C. §1983: Claim Against Defendant
NASSAU COUNTY for the Actions of the NCPD) ------------------------------------38

ELEVENTH CAUSE OF ACTION
(42U.S.C. §1983Claim Against Defendant
NASSAU COUNTY for Actions of the NCDAO)---------------------------------------41

TWELVETH CAUSE OF ACTION
(42 U.S.C. §1983;  Denial of Due Process under the Fifth, Sixth
And Fourteenth Amendments; Denial of Civil Rights and right to be free from
Cruel and Unusual Punishment under the Fourth, Eighth and Fourteenth
Amendments; Defendants NASSAU COUNTY, FORD, HARDY, DALEY AND
NCSDCD)-------------------------------------------------------------------------------------47

THIRTEENTH CAUSE OF ACTION
(42 U.S.C. §1983: Claim Against Defendant
NASSAU COUNTY for the Actions of the NCSDCD) --------------------------------50

FOURTEENTH CAUSE OF ACTION
    (Negligent Hiring, Training and Supervision under
    State Law; Defendant NASSAU COUNTY) -------------------------------------------------52

DAMAGES DEMAND --------------------------------------------------------------------------------52

UNITED STATES DISTRICT COURT
EASTERN DISCTRICT OF NEW YORK

Civil Action #:

-------------------------------------------------------------------------X

KHURRAM SHAHZAD,

**COMPLAINT**

Plaintiff,

-against-

**JURY TRIAL
DEMAND**

THE COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, SERGEANT DAVID VEVERKA,
SHIELD # 1495, POLICE OFFICER DAVID TAIT, SHIELD
#01471, SERGEANT BURTON A. FRIED, DETETIVE THOMAS
STORZ, DETECTIVE JASON PINSKY, SHIELD # 7908
OF THE FORENSIC EVIDENCE BUREAU, NASSAU
COUNTY DISTRICT ATTORNEY KATHLEEN RICE,
ASSISTANT DISTRICT ATTORNEY PATRICK J. FINLEY,
COMMISSIONER FORD, CORPORAL HARDY,
CORRECTION OFFICER DALEY and OFFICERS
OF THE NASSAU COUNTY SHERIFFS DEPARTMENT
CORRECTIONS DIVISION,

Defendants,

-------------------------------------------------------------------------X

Plaintiff, K H U R R A M   S H A H Z A D, by his Attorneys, the LAW OFFICE OF

ANDREW C. LAUFER, LLC, complaining of the Defendants, respectfully alleges, upon

information and belief, as follows:

## NATURE OF ACTION

1.     This is a civil action, pursuant to 42 U.S.C. §1983, 1985, 1986 and1988, and state law,

seeking monetary damages for Plaintiff, KHURRAM SHAHZAD ("Plaintiff", "SHAHZAD"),

due to his wrongful arrest, prosecution, conviction, and injuries sustained during his

nearly five (5) year imprisonment caused by the pervasive misconduct of THE COUNTY

OF     NASSAU     ("NASSAU     COUNTY"),     the     NASSAU     COUNTY     POLICE

DEPARTMENT("NCPD"), SERGEANT DAVID VEVERKA ("VEVERKA"), SHIELD #

1495, POLICE OFFICER DAVID TAIT ("TAIT"), SHIELD # 1471, SERGEANT BURTON A.

1

FRIED ("FRIED"), DETETIVE THOMAS STORZ ("STORZ") and DETECTIVE JASON
PINSKY ("PINSKY"), SHIELD # 7908 OF THE FORENSIC EVIDENCE BUREAU,
NASSAU COUNTY DISTRICT ATTORNEY KATHLEEN RICE ("RICE") and ASSISTANT
DISTRICT ATTORNEY PATRICK J. FINLEY ("FINLEY"), COMMISSIONER FORD
("FORD"), CORPORAL HARDY ("HARDY"), CORRECTION OFFICER DALEY
("DALEY") and OFFICERS OF THE NASSAU COUNTY SHERRIFS DEPARTMENT,
CORRECTIONS DIVISION ("NCSDCD").

2.      On April 18, 2012, County Court Judge/ Acting Supreme Court Justice Tammy S.
Robbins granted Defendants motion to set aside the 2008 jury verdict. "Based upon the People's
consent, Defendant's motion to set aside the verdict, pursuant to Criminal Procedure Law §
330.30, is granted."

3.      This lawsuit seeks to hold the Defendant NASSAU COUNTY liable for the above
misconduct under the Federal Civil Rights statute, 42U.S.C.§1983,and *Monell v. Dept. of Social
Services,* 436U.S.658(1978). The unlawful actions of police officers, detectives, prosecutors
and corrections personnel documented in this lawsuit resulted from affirmative or *defacto*
municipal policies, practices and customs to violate the constitutional rights of criminal suspects,
or from deliberate indifference by policy-making officials, acting on behalf of NASSAU
COUNTY, to such violations. As Plaintiff will demonstrate, the NCPD, Nassau County District
Attorney's Office ("NCDAO") and the NCSDCD, their agents and employees, as a matter of
policy, knowingly procured false affidavits by various individuals in support of false allegations
against Plaintiff, caused and allowed exculpatory evidence to be withheld during his prosecution,

2

introduced perjurious testimony by the arresting officers in support of the charges and unlawfully concealed exculpatory or impeachment evidence known as "Brady" materials and violated Plaintiff's constitutional rights during his period of incarceration. In the rare occasion where such misconduct as exposed, these agencies took no disciplinary action against the offending employees, but instead praised and promoted them, thereby encouraging future constitutional violations to occur, including those directed against Plaintiff.

4.      Prior to his incarceration, the principal individual Defendants, acting pursuant to unlawful municipal policy, who caused Plaintiff's unconstitutional conviction, subsequent two year detention  and cover up of the misconduct, are DETECTIVE JASON PINSKY, SHIELD # 7908, OF THE FORENSIC EVIDENCE BUREAU ("DETECTIVE PINSKY", "PINSKY") and NASSAU COUNTY DISTRICT ATTORNEY KATHLEEN RICE ("RICE").At the time of PINSKY's testimony at Plaintiff's criminal trial, the People proffered DETECTIVE PINSKY as an expert witness regarding the analysis he performed while working in the drug identification area of the Nassau County Forensic Evidence Bureau ("FEB"). According to his testimony, the tests performed on drugs allegedly found in Plaintiff's possession occurred on June 27, 2007. Since Plaintiff's criminal trial, the deficiencies of the FEB's handling of controlled substances had become public knowledge, followed by a second suspension of FEB's accreditation by the Laboratory Accreditation Board of the American Society of Crime Laboratory Directors. Information regarding the operation of the FEB, conditions, procedures or the integrity of FEB testing were not disclosed to the Defense.

5.      On December 28, 2011, in response to SHAHZAD's Motion to Set Aside the Verdict,

3

the Honorable Tammy S. Robbins ordered an evidentiary hearing be held pursuant to CPL §
330.40(f), at which time findings of fact essential to the determination of the motion will be
made. SHAHZAD argued that the Peoples failure to disclose material evidence favorable to the
defendant relating to the testimony of DETECTIVE PINSKY and in light of new evidence
discovered since his trial, that the verdict should be set aside.

6.      On April 18, 2012, the Motion to Set Aside the Verdict was granted by Order of the
Court and based on the People's consent.

7.      Defendants overall deliberate indifference to the very types of constitutional violations
that occurred in this case, together with the specific indifference to a history of non-compliance
within the FEB, were a substantial cause of the misconduct of RICE and the investigation team
aimed at Plaintiff, and thus exposes Defendant NASSAU COUNTY, for whom RICE was the
chief policymaker in the management and administration of the NCDAO, a County agency, to
federal civil rights liability under *Monell* for Plaintiff's damages.

8.      Police officers and detective-investigators employed by the NCPD and assisting the
NCDAO acted in concert with RICE and FINLEY in violating Plaintiff's Constitutional rights
and are named as Defendants in their individual as well as their official capacities.

9.      This lawsuit also seeks to hold personally accountable two attorneys at the District
Attorney's Office, RICE and FINLEY, for their misconduct, in an administrative capacity, in
covering up and withholding documents and information that would have revealed
DETECTIVE PINSKY's and the FEB's wrongdoing, and would have provided the basis to
overturn Plaintiff's conviction.

4

10.     Plaintiff seeks additional recovery against the NCPD and officers who were assigned to his case, VEVERKA, TAIT, FRIED, and STORZ, for coercing key witnesses to manufacture false evidence against Plaintiff, for suppressing exculpatory or impeachment evidence known as *"Brady* material," and for initiating Plaintiff's malicious prosecution based upon allegations in a Criminal Court complaint they knew were false. None of the misconduct of the District Attorney's office would have occurred had the arresting and investigating officers not manufactured a phony case against Plaintiff and initiated his wrongful prosecution.

11.     Defendants NASSAU COUNTY and NCSDCD with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practices of, among other things,

> a)     Subjecting persons in their jails to violence and harassment by NASSAU COUNTY employees;
>
> b)     Selecting, retaining and assigning deputies, civilian personnel and civilian volunteers to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates;
>
> c)     Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following: Separation of detainees and arrestees from potentially violent or dangerous inmates or corrections personnel; use of security cameras to monitor violence within the facility; training deputies, civilian personnel and civilian volunteers to monitor detainees and inmates and immediately respond to acts of violence, or threats of violence; recognizing potentially volatile situations and circumstances that are likely to erupt into violence.
>
> d)     Failing to adequately train, supervise, and control deputies, civilian employees or volunteers in the arts of law enforcement;
>
> e)     Failing to adequately discipline deputies or civilian employees involved in misconduct; and
>
> f)     Condoning and encouraging deputies and civilian employees in the belief that they can violate the rights of persons such as the plaintiff in this action with impunity,

and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

12.     Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants NASSAU COUNTY and NCSDCD ordered, authorized, acquiesced in, tolerated, or permitted other Defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the preceding paragraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by Defendants or on Defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff.

## JURISDICTION, VENUE, and CONDITIONS PRECEDENT

13.     This action arises under 42 U.S.C. §§1983, 1985, 1986 and1988, and under the common law of the State of New York.

14.     Jurisdiction is conferred on this Court by 28 U.S.C.§§1331and1343, and by principles of pendent jurisdiction.

15.     Venue is proper in this Court pursuant to 28 U.S.C.§1391.

16.     On or about July 23, 2012, Plaintiff served upon Defendants NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY DISTRICT ATTORNEY KATHLEEN RICE and ASSISTANT DISTRICT ATTORNEY PATRICK J. FINLEY, a timely notice of the present claims pursuant to New York General Municipal Law §50-e. A hearing pursuant to New York General Municipal Law §50-h was held on October 22, 2012.

17.     This action has been commenced within one year of the accrual of Plaintiffs causes of action.

6

18.     Plaintiff has duly complied with all of the conditions precedent to the commencement of this action.

## THE PARTIES

19.     Plaintiff, KHURRAM SHAHZAD, is a citizen and resident of the State of New York and of the United States, and resides within the Eastern District of New York.

20.     Defendant NASSAU COUNTY, is a municipal corporation of the State of New York and is a resident of the Eastern District of New York.

21.     Defendant, SERGEANT DAVID VEVERKA, SHIELD # 1495, at all relevant times, was a police officer in the NASSAU COUNTY POLICE DEPARTMENT and employed by NASSAU COUNTY, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the County of Nassau, and acted within the scope of his employment. He is sued in his individual and his official capacity.

22.     Defendant, POLICE OFFICER DAVID TAIT, SHIELD # 1471, at all relevant times, was a police officer in the NASSAU COUNTY POLICE DEPARTMENT and employed by NASSAU COUNTY, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the County of Nassau, and acted within the scope of his employment. He is sued in his individual and his official capacity.

23.     Defendant, SERGEANT BURTON A. FRIED, at all relevant times, was a police officer in the NASSAU COUNTY POLICE DEPARTMENT and employed by the COUNTY OF NASSAU, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the County of Nassau, and acted within the scope of his employment. He

7

is sued in his individual and his official capacity.

24.     Defendant, DETECTIVE THOMAS STORZ, at all relevant times, was a police officer in the NASSAU COUNTY POLICE DEPARTMENT and employed by NASSAU COUNTY, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the County of Nassau, and acted within the scope of his employment. He is sued in his individual and his official capacity.

25.     Defendant, DETECTIVE JASON PINSKY, SHIELD # 07908, OF THE FORENSIC EVIDENCE BUREAU, at all relevant times, was a police officer in the NASSAU COUNTY POLICE DEPARTMENT and employed by NASSAU COUNTY, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the County of Nassau, and acted within the scope of his employment. He is sued in his individual and his official capacity.

26.     Defendant NASSAU COUNTY DISTRICT ATTORNEY KATHLEEN RICE, at all relevant times, was a District Attorney in Nassau County, was employed by the County of Nassau, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the County of Nassau, and acted within the scope of her employment. She is sued in her individual and official capacity.

27.     Defendant, ASSISTANT DISTRICT ATTORNEY PATRICK J. FINLEY, at all relevant times, was an Assistant District Attorney in Nassau County, was employed by the County of Nassau, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the County of Nassau, and acted within the scope of his employment.

He is sued in his individual and his official capacity.

28.    The NASSAU COUNTY POLICE DEPARTMENT ("NCPD") is an agency of THE COUNTY OF NASSAU. Detectives and police officers employed by the NCPD are agents and employees of the County of Nassau, which is legally responsible for torts they commit within the scope of their employment and/or under color of law.

29.    Defendant, COMMISSIONER FORD, at all relevant times, was a corrections officer in the NASSAU COUNTY SHERIFFS DEPARTMENT, CORRECTIONS DIVISION and employed by the COUNTY OF NASSAU, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the County of Nassau, and acted within the scope of his employment. He is sued in his individual and his official capacity.

30.    Defendant, CORPORAL HARDY, at all relevant times, was a corrections officer in the NASSAU COUNTY SHERIFFS DEPARTMENT, CORRECTIONS DIVISION and employed by the COUNTY OF NASSAU, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the County of Nassau, and acted within the scope of his employment. He is sued in his individual and his official capacity.

31.    Defendant, CORRECTION OFFICER DALEY, at all relevant times, was a corrections officer in the NASSAU COUNTY SHERIFFS DEPARTMENT, CORRECTIONS DIVISION and employed by the COUNTY OF NASSAU, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the County of Nassau, and acted within the scope of his employment. He is sued in his individual and his official capacity.

32.    The NASSAU COUNTY SHERRIFS DEPARTMENT, CORRECTIONS DIVISION

9

("NCSDCD") is an agency of THE COUNTY OF NASSAU. Corrections Officers employed by the NCSDCD are agents and employees of the County of Nassau, which is legally responsible for torts they commit within the scope of their employment and/or under color of law.

33.     At all times, Defendants NCPD and NCSDCD, and each of them, possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the NCPD and NCSDCD, including those individuals charged with protecting the health and safety of detainees and arrestees at Nassau County detention facilities, including Plaintiff, and to assure that said actions, policies, rules, regulations, practices and procedures of the NCPD and NCSDCD and its employees and agents comply with the laws and constitutions of the United States and of the State of New York.

34.     Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein the individually named Defendants of the NCPD and NCSDCD were employees, agents and/or servants of the NASSAU COUNTY, acted within the course and scope of said employment, agency and/or service, and possessed the power and authority and were charged by law with the responsibility to enact policies and to prescribe rules and practices concerning the operation of county detention facilities, including the Nassau County Correctional Center, located at 100 Carman Avenue, East Meadow, New York, and concerning the means by which the life and safety of arrestees and detainees were to be secured, what criteria were to be used for placing arrestees and detainees in custody, what methods of placement of an arrestee or detainee in a jail cell were appropriate to safeguard the life and safety of the arrestee or detainee, the

10

manner in which threats to the life and safety of an arrestee or detainee were to be evaluated and acted upon, what safeguards were to be in place to prevent inmates, arrestees or detainees who posed a threat to others in the facility from being permitted physical access to those others, what actions were to be taken when an arrestee or detainee is attacked or injured while incarcerated within a county detention facility, and what methods of surveillance were to be used within each detention facility to insure immediate response to and prevention of incidents of violence occurring within jail cells.

35.     Plaintiff is ignorant of some of the true names and capacity of Defendants sued herein as OFFICERS OF THE NASSAU COUNTY SHERRIFS DEPARTMENT, CORRECTIONS DIVISION, inclusive, and therefore sues these Defendants by such fictitious name. Plaintiff is informed, believes and alleges, that each of the fictitiously named Defendants' is legally responsible, intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby legally caused the injuries, damages, and violations and/or deprivation of rights hereinafter alleged. Plaintiffs will seek leave of Court to amend this Complaint and state the true names and/or capacities of said fictitiously named defendants when the same have been ascertained.

36.     The reason why Plaintiff is ignorant of some of the true names and capacities of individual Defendants sued herein as representatives of NCSDCD, inclusive, is that same have been unascertainable as of the date of filing of this complaint, as many of these OFFICERS may be deputies, sergeants, captains, lieutenants, commanders, deputy chiefs, and/or civilian employee agents, policy makers and representatives of the NCPD and NCSDCD, or employees, agents and representatives of Defendant NASSAU COUNTY and others, and as such many of

11

their records are protected by state statute and can only reasonably be ascertained through the discovery process.

37.     The individual Defendants were at all times mentioned herein duly appointed, qualified and acting officers of the NCPD and NCSDCD, acting within the course and scope of such employment with the NASSAU COUNTY and under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and of the County of Nassau.

38.     Defendants NASSAU COUNTY, NYPD and NCSDCD with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practices of, among other things,

   a)     Subjecting persons in their jails to violence perpetrated by correction officers, other detainees, arrestees or inmates.

   b)     Selecting, retaining and assigning correction personnel, civilian personnel and civilian volunteers to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates;

   c)     Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following: Separation of detainees and arrestees from potentially violent or dangerous inmates or corrections employees; use of security cameras to monitor violence within the facility; training deputies, civilian personnel and civilian volunteers to monitor detainees and inmates and immediately respond to acts of violence, or threats of violence; recognizing potentially volatile situations and circumstances that are likely to erupt into violence.

d)      Failing to adequately train, supervise, and control correction personnel, civilian employees or volunteers in the arts of law enforcement;

e)      Failing to adequately discipline correction personnel or civilian employees involved in misconduct; and

f)      Condoning and encouraging correction personnel and civilian employees in the belief that they can violate the rights of persons such as the plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

39.     Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants' NASSAU COUNTY, NCPD and NCSDCD ordered, authorized, acquiesced in, tolerated, or permitted other Defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth herein. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by Defendants or on Defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A.      The Alleged Crime and the Initial Investigation

40.     On June 8, 2007, Plaintiff KHURRAM SHAHZAD was arrested after allegedly being observed operating a 1996 white Audi in an easterly direction on Merrick Road in Massapequa, Nassau County, and allegedly failing to obey a steady red traffic light at the intersection of Merrick Road and Glen Road.

41.     Two plain clothes police officers approached the vehicle Plaintiff in which was seated in while in a parking lot located at Dunkin Donuts on Merrick Road in Massapequa, New York.

13

42.     Plaintiff had not driven the vehicle or parked it in its space. He was sitting in the vehicle with a passenger drinking coffee when approached by police.

43.     Plaintiff, the passenger and the vehicle were searched. The officers allegedly discovered various narcotics in Plaintiff's possession.

44.     Both men were taken into custody. Plaintiff was arrested on June 9, 2007.

45.     On June 27, 2007, the drugs allegedly recovered from Plaintiff's person and the vehicle was tested by Defendant PINSKY at the Forensics Evidence Bureau.

B.     Plaintiff's Arrest and Indictment

46.     Within the accusatory instruments, it was alleged that Plaintiff was "in possession of three clear packages of a greenish-brown substance....pills believed to be OC or oxycontin...Atavin...Percocet....Impersonation of his brother...refusal to take a chemical test...driving with a (n) (aggravated) suspended license...and passing a red light."

47.     The allegations were all false, as Plaintiff was not in possession of any illegal substances, did not impersonate his brother, refuse a chemical test, operate a motor vehicle with a suspended license or pass a red light.

48.     On or about February 6, 2008, Plaintiff was indicted on charges of violating Penal Law Criminal Possession of a Controlled Substance in the Fourth Degree, sec. 220.09(1), Criminal Possession of a Controlled Substance in the Seventh Degree, sec. 220.03, Unlawful Possession of Marijuana, sec. 221.05, Criminal Impersonation in the Second Degree, sec. 190.05[1], Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree, VTL sec. 551.1, Aggravated Unlicensed Operation of a Motor Vehicle in the Second Degree, VTL sec. 511.1[a][ii] and failing to Stop at a Red Light, VTL sec 111.D1.

14

49.    Upon information and belief, in support of the false allegations against Plaintiff, the arresting and investigating officers of the NCPD, acting on behalf of NASSAU COUNTY and the NCPD, knowingly procured false affidavits and caused and/or allowed exculpatory evidence to be withheld from Plaintiff during the prosecution of the underlying criminal action.

50.    Plaintiff remained in custody of the NCPD for approximately 346 days before his case was dismissed.

51.    On or about October 24, 2010, Plaintiff was notified that his case had been reopened. Plaintiff appeared in Nassau County Criminal Court for a two week long trial.

C.    Plaintiff's Criminal Trial

52.    Plaintiffs criminal trial was held in the Supreme Court for the State of New York, County of Nassau, before the Honorable Tammy S. Robbins.

53.    Plaintiff was convicted of all charges against him.

54.    Upon information and belief, in support of the charges, the prosecution introduced perjurious testimony by the arresting officers, alleging Plaintiff stated "the pills are mine, the coke is Rob's" and "the license is my brother's, mine is suspended."

55.    The prosecution failed to disclose Brady materials and improperly offered DETECTIVE PINSKY as a putative 'expert'.

56.    On or about December 1, 2010, Plaintiff was unjustly sentenced to two years imprisonment.

57.    RICE and FINLEY were required, under the Constitution and the Laws of the United States and of the State of New York, to disclose to the defense all evidence and information known to the NCPD or to the NCDAO that was favorable to the defense and, considered

15

cumulatively, was reasonably likely to affect the outcome of the trial [*"Brady"* material].

58.   Where such information had been specifically requested by the defense, RICE and FINLEY were required under New York law to disclose it if there was any reasonable possibility that it might affect the trial's outcome.

59.   This included (a) Information directly tending to establish the Defendant's innocence, and (b) information tending to impeach the credibility of significant witnesses called by the prosecution to meet its burden of convincing every member of the jury, beyond a reasonable doubt, that the Defendant was guilty.

60.   Such information was required to be disclosed in a timely manner, meaning sufficiently in advance of trial to permit the defense to adequately investigate and make use of it.

61.   Such information had to be disclosed whether it was recorded or just verbal.

62.   In addition, RICE and FINLEY had a Federal Constitutional obligation not to introduce testimony or evidence, or to make argument, that they knew, or should have known, was false or misleading, and to promptly correct any false or misleading evidence or argument that the prosecution presented to the court or to the jury.

63.   Finally, RICE and FINLEY had an absolute obligation under New York law, at the beginning of the trial, to disclose to the defense all recorded statements of prosecution witnesses (known as *"Rosario* material") relevant to the subject matter of their direct testimony.

64.   Where *Rosario* material was favorable to the defense and material, it would also be required to be disclosed under *Brady*.

65.   By law, the defense was legally entitled to rely on the completeness of RICE and FINLEY's *Brady* and *Rosario* disclosures.

66.     By law, the defense was not required to assume that RICE and FINLEY, as Officers of the Court and law enforcement officials, had made an incomplete, false, or misleading disclosure.

67.     RICE and FINLEY did not disclose information regarding the deficiencies of the FEB's handling of controlled substances, which has since become public knowledge.

68.     Information regarding the operation of the FEB, conditions, procedures or the integrity of FEB testing were not disclosed to the Defense.

69.     As a result, the defense was completely reliant on the accuracy and the completeness of the information provided by the prosecutor.

70.     Rather than comply with their constitutional and statutory obligations, RICE and FINLEY systematically misled the court, the jury, and the defense concerning the circumstances under which DETECTIVE PINSKY and the FEB handled the controlled substances allegedly discovered in the defendant's possession, introduced p u r j u r i o u s testimony and affidavits of witnesses, made arguments which t h e y knew were false or misleading, and withheld *Brady* and *Rosario* materials t h e y knew or should have known t h e y w e r e r e quired to disclose, including evidence that Plaintiff was innocent.

1.     POLICE OFFICER DAVID VEVERKA

71.     VEVERKA affirmed that he conducted a VTL stop of SHAHZAD for a traffic infraction (disobeying a steady red traffic signal) at the intersection of Merrick Road and Glen Drive in Massapequa.

72.     At the time of the stop, VEVERKA claims SHAHZAD was operating a 1996 white Audi and upon his request for the driver's license, SHAHZAD supplied a drivers license in the name

17

of Saeed Hassan.

73.     VEVERKA further affirms that SHAHZAD admitted to impersonating his brother, Saeed Hassan, because his license privilege is suspended.

                    2.      POLICE OFFICER DAVID J. TAIT

74.     TAIT affirmed that SHAHZAD was arrested for Criminal Possession of Controlled Substance and Search Incident to a Lawful Arrest that he did have in his right front pants pocket a plastic zip-lock bag containing four round blue pills with the imprint "Percocet 5" which are believed to be the controlled substance Percocet.

75.     TAIT also affirmed that a self-admission by SHAHZAD confirmed that the pills were Percocet.

76.     TAIT affirmed that SHAHZAD was arrested for Criminal Possession of Controlled Substance and Search Incident to a Lawful Arrest that he did have in his left front pants pocket a plastic zip-lock bag containing thirteen round white pills with the imprint "OC" on one side and the number "10" on the other, which are believed to be the controlled substance Oxycontin.

77.     TAIT also affirmed that a self-admission by SHAHZAD confirmed that the pills were Oxycontin.

78.     TAIT affirmed that he observed SHAHZAD was arrested for Criminal Possession of Controlled Substance and Search Incident to a Lawful Arrest that he did have in his right front pants pocket a plastic zip-lock bag containing one round white pills with the imprint "RX 773" which is believed to be the controlled substance Atavin.

79.     TAIT affirmed that he observed SHAHZAD in possession of three clear packages of greenish-brown substance believed to be marijuana which were recovered incident to arrest in

the 1996 Audi SHAHZAD was operating.

80.     Additionally, TAIT affirms that SHAHZAD committed the offense of Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree and the suspension or revocation is based upon a refusal to submit to a chemical test pursuant to section 1194 of the Vehicle and Traffic Law of the State of New York or upon a conviction for a violation of any of the provisions of section 1192 of the Vehicle and Traffic Law of the State of New York.

81.     TAIT testified at the grand Jury proceeding that he had pulled over SHAHZAD's vehicle for proceeding through a red light. As SHAHZAD reached into the glove compartment for his license and registration, TAIT alleged he observed a zip-lock bag containing a white, rock-like substance.

### 3.     DETECTIVE THOMAS STORZ

82.     On June 8, 2007, STORZ invoiced and delivered the following to the Forensic Evidence Bureau (FEB) for testing; pills believed to be Oxycontin, pills believed to be Atavin, pills believed to be Percocet, and substances believed to be cocaine and marijuana.

83.     The items invoiced and delivered to FEB were supposedly found incident to the arrest of SHAHZAD, with the exception of the substance believed to be cocaine, which was apparently in plain view during the VTL stop.

### 4.     DETECTIVE JAYSON C. PINSKY

84.     On June 27, 2007, PINSKY, while employed by the FEB, completed his analysis of the materials submitted in connection with the arrest of SHAHZAD.

85.     PINSKY affirmed that the submitted materials contained the following: less than two pounds, pure substance Lorazepam, seventeen Oxycodone pills and less than 25 grams aggregate

19

weight of marijuana.

86.     The items invoiced and delivered to FEB were supposedly found incident to the arrest of SHAHZAD, with the exception of the substance believed to be cocaine, which was apparently in plain view during the VTL stop.

87.     At the criminal trial, PINSKY testified as an "expert", but failed to accurately represent the conditions and procedures of the FEB and the effect that their non-compliance with regulations had on the integrity of the tests performed.

### D.     Plaintiff's Conviction, Sentencing and Motion

88.     On or about December 1, 2010, Plaintiff was found guilty of criminal possession of controlled substances, unlawful possession of marijuana and unlicensed operation of a motor vehicle.

89.     The court sentenced Plaintiff to two years imprisonment on December 1, 2010.

90.     On September 22, 2011, Plaintiff filed a motion to Set Aside the Guilty Verdict in the Nassau County Criminal Court.

91.     Plaintiff's motion, among other things, challenged the People's failure to disclose material evidence relating to the testimony of DETECTIVE PINSKY, including but not limited to his status as a putative expert.

92.     On December 28, 2011, the Honorable Tammy S. Robbins found that an evidentiary hearing must be held pursuant to CPL § 330.40(f), at which time findings of fact essential to the determination of the motion were to be made.

93.     On April 18, 2012, the Motion to Set Aside the Verdict was granted.

20

E.      Information Wrongfully Withheld

94.     In the year between the criminal trial and Plaintiff's Motion to Set Aside the Verdict, the failures of FEB procedures became public knowledge. The subject was covered in the press and the District Attorney had taken steps to close down the lab where PINSKY had been employed.

95.     The FEB's accreditation by the Laboratory Accreditation Board of the American Society of Crime Laboratory Directors was suspended in 2010, after years of deficiencies in the operation of the FEB and lack of integrity at the time of testing in Plaintiff's criminal case.

96.     In August 2006, the FEB was placed on probation after a 2005 laboratory inspection which yielded eighteen areas of non-compliance with "essential accreditation criteria", most relating to the controlled substance discipline.

97.     The FEB was re-accredited in May of 2008, but a subsequent November 2010 inspection found nine areas of non-compliance directly related to the controlled substance discipline; including but not limited to failure to mark all evidence for identification, use of undocumented reagents, failure to properly calibrate sophisticated testing equipment and the failure to properly document conclusions and opinions.

98.     During the underlying criminal trial, the People questioned PINSKY in support of it's motion that he be qualified as an expert. The questioning did not include any information regarding the conditions or procedures of the FEB or the effect the inspections and suspension may have had on the integrity of the tests and analysis performed within the lab.

F.      Plaintiff's Incarceration

99.     While detained at the Nassau County Correctional Center, located at 100 Carman Avenue, Plaintiff was assaulted, battered and beaten by inmates and Correctional Officers, including, but not limited to, upon information and belief, CORPORAL HARDY, CORRECTION OFFICER DALEY, and Officers employed by the NCSDCD. The injuries – which include scarring and facial disfigurement, having left Plaintiff with neurologic and psychological damage.

100.    Aside from the physical attacks, throughout his incarceration, Plaintiff was denied basic nutritional necessities. Despite several written requests to meet with a dietician or nutritionist, Plaintiff was given turkey to eat, when NCSDCD personnel were well aware that Plaintiff is allergic to turkey. After expressing concerns about his health, food was regularly withheld. At times, Plaintiff would intentionally be given trays containing turkey.

101.    Plaintiff was the victim of racial and religious discrimination by NCSDCD personnel, being called "Taliban" and being told to" go back where you came from". By abusing Plaintiff verbally publicly, NCSDCD personnel incited events of physical and verbal abuse of Plaintiff by other inmates. NCSDCD personnel did not attempt to stop the abuse of Plaintiff, instead, punished him by placing him in "lock in" and restricting him from exercise.

102.    Plaintiff filed internal written complaints to the NCSDCD and Defendant FORD. Complaints to Supreme Court Justice Robbins, the Human Rights Commission and American Civil Liberties Union were clear in explaining Plaintiff's concerns that he was being harassed and abused and he feared for his life. Plaintiff requested transfers to another facility on several occasions.

103.    The brutal attacks suffered by Plaintiff were perpetrated by and in the presence of Correction Officers in the jail while in custody of the NASSAU COUNTY and the NCSDCD,

and the incident occurred because of the deliberate indifference, gross negligence or reckless disregard of Defendants to the safety and security of Plaintiff.

104. NCSDCD officers, sergeants, correction personnel, supervisors and civilian personnel recklessly and with deliberate indifference, failed to appropriately protect inmates within the Nassau County Correctional Center, failed to maintain audio or visual surveillance on inmates, failed to immediately and appropriately respond to altercations which erupted into brutal attacks, and allowed the altercations and attacks to continue for an extended period of time, causing Plaintiff to suffer severe injury, resulting in permanent disfigurement and severe psychological damage.

105. NCSDCD officers and civilian personnel, intentionally, recklessly and with deliberate indifference, failed to take immediate action to summon medical care for Plaintiff, despite the fact they knew or should have known he was in need of immediate medical care when Plaintiff was observed bleeding from his face and body and when he was clearly in the midst of a severe allergic reaction.

G.    Plaintiff's Damages and Injuries

106. Plaintiff's injuries and damages include, but are not limited to:

a)    His false and malicious prosecution and conviction for Criminal Possession of a Controlled Substance and Unlicensed Operation of a Motor Vehicle;

b)    His loss of liberty for a total of approximately 4 years and 11 months, including;

c)    Physical injuries he suffered during physical assaults by inmates and employees of the Department of Corrections, and the mental and emotional effects of such assaults;

d)    Past and future physical illnesses and injuries as a result of his wrongful conviction and his experiences in prison;

23

f)    Past and future mental and emotional injuries and suffering;

107.    The wrongful acts of the individual Defendants, were willful, oppressive, intentional and malicious; therefore, punitive damages should be assessed against Defendants in an amount deemed sufficient to punish and deter Defendants and others in similar positions of authority from engaging in similar conduct in the future.

108.    Pursuant to 42 U.S.C. section 1988(b), Plaintiff is entitled to recover his reasonable attorney fees incurred herein.

## FIRST CAUSEOFACTION

(Malicious prosecution under State Law; Defendants NASSAU COUNTY, NCDAO, NCPD, VEVERKA, TAIT, FRIED, STORZ, PINSKY, RICE and FINLEY)

109.    Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

110.    By virtue of the foregoing, the Individual defendants, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

111.    The criminal proceedings terminated in Plaintiff's favor.

112.    There was no probable cause for the commencement or the continuation of the criminal proceedings.

113.    The Defendants acted with actual malice.

114.    Defendant NASSAU COUNTY is liable under the principal of respondeat superior.

## SECOND CAUSE OF ACTION

(Intentional Infliction of Emotional Distress under State Law; All Defendants)

115.    Plaintiff repeats and realleges each and every allegation contained above as if set forth fully

24

herein.

116. Defendants engaged in a continuous pattern of extreme and outrageous conduct directed at Plaintiff until his release from prison in April, 2012.

117. Defendants engaged in that pattern of conduct with an intention to cause, or in reckless disregard of the substantial probability that it would cause Plaintiff severe emotional distress.

118. Defendants, individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, while acting in an investigative or administrative capacity, coerced witnesses into making false statements to be used against Plaintiff, created false official records to be used against Plaintiff, initiated or caused the initiation and continuation of false and unfounded criminal charges against Plaintiff while lacking probable cause to do so, abused judicial process in order to gain unlawful custody of and to coerce witnesses to make false statements against Plaintiff and commit perjury at Plaintiffs trial, suppressed *Brady* and *Rosario* material before, during, and after trial, attempted to cover up and conceal their misconduct, and repeatedly and continually lied to and defrauded every court to review Plaintiffs conviction concerning the existence of evidence favorable to Plaintiff and their past misconduct.

119. Plaintiff, while in Defendants' custody, was savagely attacked and beaten by Defendants CORPORAL HARDY, CORRECTION OFFICER DALEY, and OFFICERS OF THE NASSAU COUNTY SHERRIFS DEPARTMENT, CORRECTIONS DIVISION and sustained severe psychological damage and other physical injuries.

120. NCSDCD officers and/or supervisors, all individual and all municipal Defendants herein, agents, servants and/or employees of the NASSAU COUNTY and within the course and scope

25

of such agency, service and/or employment, and under color of authority, were negligent in regards to Plaintiff's health, safety and welfare, and breached that duty of care.

121. As a result, Plaintiff was injured and he became permanently disfigured and severely psychologically damaged.

122. Plaintiff suffered severe emotional distress as a result of, and that was proximately caused by, the Defendants' aforementioned actions.

123. By virtue of the foregoing, Plaintiff suffered the actual damages identified a b o v e .

124. Defendant NASSAU COUNTY is liable under the principle of respondeat superior.

### THIRD CAUSE OF ACTION

(Abuse of Process under State Law; Defendants RICE, FINLEY, NCPD, VEVERKA, TAIT, FRIED, STORZ and PINSKY)

125. Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

126. Defendants, individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, employed regularly issued criminal legal process against Plaintiff.

127. Specifically, they introduced perjurious testimony by the arresting officers alleging Plaintiff stated "the pills are mine, the coke is Rob's" and "the license is my brother's, mine is suspended" in support of the aforementioned criminal charges.

128. In support of false allegations, Defendants caused or allowed exculpatory evidence to be withheld from the defense during the criminal trial.

129. The perjurious testimony, failure to disclose Brady materials and offering Defendant PINSKY as a putative "expert" was wrongfully and fraudulently procured by the defense.

130.   Defendants did so with the intent to do harm to Plaintiff, with actual malice, and without excuse or justification.

131.   By virtue of the foregoing, Plaintiff was caused the actual and special damages identified above.

132.   Defendant NASSAU COUNTY is liable under the principle of respondeat superior.

## FOURTH CAUSE OF ACTION

(Actual and Constructive Fraud under State Law; Defendants NCPD, VEVERKA, TAIT, FRIED, STORZ and PINSKY)

133.   Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

134.   Defendants made representations of material "fact" which were false, and known to be false by Defendants, for the purpose of inducing other parties, including Plaintiff, to rely upon such false representations, and the other parties did so rely, in ignorance of the falsity of such representations, thereby causing Plaintiff's injuries.

135.   Specifically, Defendants made, caused to be made, acted in concert or conspired to make, and/or aided or abetted one another to make, representations as to material facts which were false, and known to be false by Defendants, to wit, there presentations by arresting and investigating officers, *supra,* the false affirmations and affidavits of officers caused to be made and submitted to the court, the false business records the NCPD caused to be filed with the D.A.'s office, Police Department, and Probation Department claiming that Plaintiff was in possession of illegal substances, was operating a motor vehicle without a license, and the false representations by arresting officers in their affidavits.

136.   The statements and affirmations, made by the Defendants personally and/or at their

27

direction, were known by them to be false or misleading or were made with deliberate indifference to their truth or falsity or to their misleading nature.

137.    The statements were made by Defendants (or at their direction) for the purpose of inducing other parties, including various courts, Defendants' supervisors, and/or Plaintiff, to rely upon such false representations, and such parties rightfully did so rely, in ignorance of the falsity of such representations, and to Plaintiff's detriment.

138.    The Defendants employed by the NCDAO had a fiduciary, confidential, and special relationship with and duty to Plaintiff, arising out of their special status under the law as officers of the court, the absolute deference and trust that courts give to their factual representations concerning the possession or control by the NCDAO of *Brady* material, their strict legal duty under the Constitution and the laws of the United States and the State of New York to fully and accurately disclose such material, and Plaintiffs entitlement to rely upon the accuracy and the completeness of such disclosures, to make accurate and complete disclosures so that Plaintiff would not be misled as to the existence or non-existence of such materials and whether to file legal actions for redress of violations of his constitutional rights.

139.    Plaintiff was entitled to rely, and foreseeably did rely, upon Defendants to faithfully carry out their aforementioned duties and on Defendants' factual representations.

140.    Defendants' aforementioned conduct caused or perpetuated the Plaintiffs injuries and damages as alleged, by knowingly, willfully, intentionally, recklessly, and/or negligently depriving him, or delaying his acquisition, of information to which he was legally entitled and by causing him to believe that such information did not or might not exist, and, as a result, by causing him to file a Motion to Vacate his conviction.

141.   Defendant NASSAU COUNTY is liable under the principle of respondeat superior.

## FIFTH CAUSE OF ACTION

(Negligent Misrepresentation under State Law; Defendants NASSAU COUNTY, NCPD, VEVERKA, TAIT, FRIED, STORZ, PINSKY, RICE and FINLEY)

142.   Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

143.   Defendants had a duty, as a result of their special relationship with Plaintiff, to give Plaintiff and others correct information.

144.   Defendants made false representations to Plaintiff and others that Defendants should have known were incorrect, including, but not limited to, the integrity of the tests performed by Defendant PINSKY and the FEB.

145.   Defendants' false representations were made for the purpose of inducing other parties, including Plaintiff, other prosecutors, and various courts, to rely upon such false representations.

146.   Defendants knew that the information supplied in their representations was desired by Plaintiff, and others, for a serious purpose, specifically, to challenge Plaintiffs conviction and sentence and/or to comply with or rule upon Plaintiffs request for access to *Brady* material.

147.   Plaintiff and others, including various courts, intended to rely and act upon Defendants' representations, and did in fact reasonably rely on those representations, in ignorance of the falsity of such representations.

148.   Defendants' aforementioned conduct caused or perpetuated Plaintiffs injuries as alleged herein, by causing the wrongful continuation of his criminal conviction, his imprisonment, and his related damages, by causing him to incur substantial legal fees, by depriving him of the employment income he would have been able to earn had he not been convicted and imprisoned,

29

and by depriving him, or delaying his acquisition, of information favorable to his defense to which he was entitled under the Constitution and the laws of the State of New York and of the United States and which was necessary for him to successfully litigate his Motion to Vacate his Conviction.

## SIXTH CAUSE OF ACTION

(42U.S.C.§1983; Denial of Due Process and a Fair Trial under the Fifth, Sixth and Fourteenth Amendments; Malicious Prosecution and Deprivation of Liberty
Under the Fourth and Fourteenth Amendments; Defendants NCPD, VEVERKA, TAIT, FRIED, STORZ and PINSKY)

149.    Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

150.    Defendants knowingly and willfully manufactured, or caused the manufacturing of, a false oral statement, where Plaintiff admits the possession of controlled substances and the operation of a motor vehicle without a license.

151.    They knew that the statement would, and caused the statement to, be relied upon by the NCDAO and the court as a basis to arrest Plaintiff, to formally initiate his prosecution and to hold him for trial.

152.    Defendants thereafter knowingly swore to a false Criminal Court complaint initiating the criminal prosecution of Plaintiff, and causing Plaintiff to remain in custody.

153.    Defendants, with actual malice, initiated and continued, or caused the initiation and continuation of, criminal proceedings against Plaintiff for which they knew, or should have known, there was no probable cause, and for which in fact there was no probable cause, and thereby caused Plaintiff to be deprived of his liberty. Such proceedings ultimately were

30

terminated in Plaintiffs favor.

154. Additionally, Defendants knew, but withheld from the NCDAO, either permanently or for a substantial period of time, and therefore from the court and the defense, exculpatory or impeachment evidence that tended to negate Plaintiffs guilt and which they knew or should have known the law required them to timely disclose.

155. The aforesaid conduct, which Defendants committed in concert with and in aid of each other, and/or in concert or conspiracy with others named and unnamed, operated to deprive Plaintiff of his rights under the Constitution and the Laws of the United States:

> a) Not to be arrested, indicted, prosecuted, detained, convicted, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence," including the statements and testimony of witnesses who have been improperly influenced, coerced, or manipulated to provide such statements and testimony, in violation of the Due Process and Fair Trial Clauses of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

> b) Not to be deprived of his liberty absent probable cause to believe he has committed a crime, in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution; and

> c) To timely disclosure of all material evidence favorable to the defense pursuant to *Brady v. Maryland,* 373U.S.83(1963), *Giglio v. UnitedStates,_* 405 U.S. 150 (1972), and their progeny, and the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

156. The foregoing violations of Plaintiffs federal constitutional rights by the Defendants and their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the initiation and continuation of Plaintiffs criminal prosecution, his loss of liberty and detention, his wrongful conviction, his subsequent imprisonment, and his other injuries and damages.

157.   The foregoing violations of Plaintiffs rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendants' employment and authority.

158.   Defendants committed the foregoing violations of Plaintiffs rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to Plaintiffs constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

159.   By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42 U.S.C. §1983, for compensatory and for punitive damages.

### SEVENTH CAUSE OF ACTION

(42 U.S.C. §1983; Denial of Due Process and a Fair Trial Under the Fifth, Sixth and Fourteenth Amendments; Malicious Prosecution, Abuse of Process, and Deprivation of Liberty under the Fourth, Fifth, Sixth, and Fourteenth Amendments; Defendants NCPD, VEVERKA, TAIT, FRIED, STORZ and PINSKY)

160.   Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

161.   Knowing that any colorable cause to continue the prosecution had evaporated, the arresting and investigating officers, in the capacity of an investigator or "witness," acted in concert and conspired with the NCDAO and others, named and unnamed, to use any means, no matter how unlawful or coercive, to obtain affirmations and evidence falsely accusing Plaintiff of the charged crimes.

162.   These illegal and unconstitutional means included, but were not limited to,

        a)      Personally attesting to "facts" which they knew were untrue in order to deceive the court into issuing orders authorizing them to take custody of such

32

witnesses;

b)      Intentionally withholding information regarding the operation of the FEB and the integrity of the tests performed;

c)      Failing to acknowledge or disclose the disparity in the character of the substances supposedly recovered from the vehicle and the items invoiced and analyzed by FEB.

163.    These lawless actions foreseeably caused the aforementioned witnesses to manufacture false evidence which Defendants then used to continue Plaintiffs malicious prosecution, without probable cause, and to bring about his false conviction at trial.

164.    Additionally , Defendants, acting in an investigative or administrative capacity, had a duty to Plaintiff to carry out the Office's ongoing obligation, pursuant to the Due Process Clause of the Constitution and *Brady v. Maryland,* 373 U.S. 83 (1963), to disclose, upon Plaintiffs request, documents and information favorable to Plaintiff with respect to his criminal prosecution and conviction. Nevertheless, acting in concert with Defendants RICE and FINLEY, said Defendants knowingly, willfully, recklessly, and/or with deliberate indifference to their Constitutional and statutory obligations, failed to disclose information to Plaintiff, thereby substantially delaying Plaintiffs efforts to overturn his wrongful conviction and prolonging his prosecution and imprisonment.

165.    The aforesaid conduct operated to deprive Plaintiff of his rights under the Constitution and the Laws of the United States:

a)      Not to be arrested, indicted, prosecuted, detained, convicted, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence," including the statements and testimony of witnesses who have been improperly influenced, coerced, or manipulated to provide such statements and testimony, in violation of the Fourth and Fourteenth Amendments,

and the Due Process and Fair Trial Clauses of the Fifth, Sixth and Fourteenth Amendments, to the United States Constitution;

b)      Not to be deprived of his liberty absent probable cause to believe he has committed a crime, in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution; and

c)      To timely disclosure of all material evidence favorable to the defense pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. UnitedStates*,. 405 U.S. 150 (1972), and their progeny, and the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

166.    The foregoing violations of Plaintiffs Federal Constitutional rights by the Defendants, together with their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the continuation of Plaintiffs malicious prosecution without probable cause, his wrongful conviction, his subsequent imprisonment, the defeat and delay of his efforts to overturn his wrongful conviction, and his other injuries and damages.

167.    The foregoing violations of Plaintiffs rights amounted to Constitutional torts and were affected by actions taken under color of State Law and within the scope of the Defendants' employment and authority.

168.    Defendants committed the foregoing violations of Plaintiffs rights knowingly, intentionally, willfully, recklessly, negligently, and/or with deliberate indifference to Plaintiffs constitutional rights or to the effect of such misconduct upon Plaintiffs constitutional rights.

169.    By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42U.S.C. §1983, for compensatory and for punitive damages.

## EIGHTH CAUSE OF ACTION

*(42* U.S.C. §1983: Conspiracy and freedom from Unreasonable Search and Seizure; All Defendants)

170.   Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

171.   Defendants, under color of law, conspired with one another to deprive Plaintiff of his constitutional rights, including the rights: to be free from unreasonable searches and seizures, to associate and speak freely, to have access to and seek redress in the courts and to be free from false imprisonment.

172.   In furtherance of the conspiracy and in order to cover up the aforementioned unlawful acts, Defendants engaged in the following:

> a) Falsely arresting and imprisoning Plaintiff;
>
> b) Fabricating and contriving criminal charges lodged against Plaintiff,
>
> c) Jointly devising a false, exculpatory version of the events of June 8, 2007, which would be told to investigating authorities and the court;
>
> d) Failing to come forward with evidence and information that would incriminate the individuals involved, in violation of Officer Defendants' sworn duty as police officers;
>
> e) Knowingly giving false and defamatory information to departmental investigators, grand jury and the court;
>
> f) Submitting false police reports, statements and testimony, to support and

35

corroborate the fabricated charges lodged against Plaintiff, in order to insulate Defendants from administrative and criminal sanctions;

173. The foregoing violations of Plaintiffs Federal Constitutional rights by the Defendants, together with their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the continuation of Plaintiffs malicious prosecution without probable cause, his wrongful conviction, his subsequent imprisonment, the defeat and delay of his efforts to overturn his wrongful conviction, and his other injuries and damages.

174.   The foregoing violations of Plaintiffs rights amounted to Constitutional torts and were affected by actions taken under color of State Law and within the scope of the Defendants' employment and authority.

175.   Defendants committed the foregoing violations of Plaintiffs rights knowingly, intentionally, willfully, recklessly, negligently, and/or with deliberate indifference to Plaintiffs constitutional rights or to the effect of such misconduct upon Plaintiffs constitutional rights.

176.   By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42U.S.C. §1983, for compensatory and for punitive damages.

## **NINTH CAUSE OF ACTION**

*(42* U.S.C. §1983: Freedom from Unreasonable Excessive Force, Failure to Protect while in Custody and Failure to Intercede, Conspiracy with Racial Animus; NASSAU COUNTY, FORD, DALEY AND NCSDCD)

177.   Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

178.    Defendants, under color of law, by their conduct, deprived Plaintiff of his constitutional rights; to be free from excessive and unreasonable force, in declining or refusing to intercede to prevent such excessive force and failing to secure appropriate medical attention while in custody.

179.    Defendants acted maliciously and with deliberate indifference as to Plaintiff's constitutional rights by savagely attacking and beating Plaintiff and depriving him of appropriate nourishment with knowledge of his sever food allergy, causing him to sustain severe psychological damage and other physical injuries.

180.    Each Defendant had the opportunity to intercede on behalf of Plaintiff but due to their intentional conduct or deliberate indifference, declined or refused to do so.

181.    In failing to protect Plaintiff from violence while in the custody of NCSDCD, and in failing to intercede or secure him the appropriate medical attention for the injuries sustained, Plaintiff was deprived of his constitutional rights and suffered sever physical and mental pain and suffering.

182.    The conduct of Defendants was motivated by racial animus and by their desire to injure, oppress, threaten and intimidate Plaintiff because of his race and origin.

183.    Defendants' racial and ethnic animus was expressed in racially and ethnically insulting remarks directed at Plaintiff, causing uprising, conflict and violence between Plaintiff and other inmates.

184.    The foregoing violations of Plaintiffs rights amounted to Constitutional torts and were affected by actions taken under color of State Law and within the scope of the Defendants' employment and authority.

37

185.   Defendants committed the foregoing violations of Plaintiffs rights knowingly, intentionally, willfully, recklessly, negligently, and/or with deliberate indifference to Plaintiffs constitutional rights or to the effect of such misconduct upon Plaintiffs constitutional rights.

186.   By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42U.S.C. §1983, for compensatory and for punitive damages.

## TENTH CAUSE OF ACTION

*(42* U.S.C. §1983: Claim against Defendant NASSAU COUNTY for the Actions of the NCPD)

187.   Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

188.   The foregoing violations of Plaintiffs Federal Constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendant NASSAU COUNTY, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

189.   Prior to Plaintiffs arrest, policymaking officials at the NCPD, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and Defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

        a)   The determination of probable cause to make an arrest;

        b)   Chain of custody for evidence supposedly obtained incident to arrest;

and

c)      The continuing duty of police investigators to preserve and to make timely disclosure to the District Attorney, during criminal investigations and prosecutions, of all material evidence or information *("Brady* material") favorable to a person suspected, accused or convicted of criminal conduct, including, but not limited to, evidence of innocence, evidence that an identifying or prosecution witness is unreliable or lacks general credibility, evidence that a prosecution witness has made inconsistent statements about material facts, and evidence that a prosecution witnesses has a motive, bias or interest affecting his credibility or has been pressured or coerced, so that the District Attorney could comply with his constitutional obligation to disclose such information to the defense under *Brady.*

190.    The aforesaid deliberate or *defacto* policies, procedures, regulations, practices and/or customs(including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendant NASSAU COUNTY, including but not limited to, the NCPD Police Commissioner, who knew (or should have known):

a)      to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

b)      that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

c)      that the wrong choice by such employees  concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

191.    The aforementioned policy making officials had the knowledge and the notice alleged in the preceding paragraph based upon, among other circumstances:

a)      credible allegations, many  substantiated by judicial decisions finding, that

39

NCPD officers had wrongfully withheld material evidence or knowingly given false or misleading testimony;

b)      civil lawsuits some of which resulted in substantial civil settlements, credibly alleging that police had falsified, exaggerated, or withheld material evidence, or conducted searches or arrests without probable cause;

c)      numerous decisions of the United States Supreme Court, the United States Court of Appeals for the Second Circuit, the New York Court of Appeals, and the New York Appellate Division, discussing the difficult issues that regularly arise under *Brady* as well as the probable cause requirement of the Fourth Amendment;

d)      the inherent obviousness of the need to train, supervise and discipline police officers in such obligations to counteract the pressure on officers and the powerful incentives they have to close cases and to obtain arrests and convictions.

192.    Under the principles of municipal liability for federal civil rights violations, the Nassau County Police Commissioner (or his authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including constitutional requirements governing the interrogation of witnesses, the initiation of criminal prosecutions, and the disclosure of *Brady* material.

193.    The Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority, and constitutes a County policy maker for whom the County is liable, with respect to compliance by NCPD employees with the above-mentioned constitutional requirements.

194.    During all times material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he

was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or Defendants and of other members of the public.

195.    The aforesaid policies, procedures, regulations, practices and/or customs of Defendants NASSAU COUNTY and the NCPD were collectively and individually a substantial factor in bringing about the aforesaid violations by the Individual Police Defendants of Plaintiffs rights under the Constitution and Laws of the United States.

196.    By virtue of the foregoing, Defendant NASSAU COUNTY is liable for having substantially caused the foregoing violations of Plaintiffs constitutional rights and his constitutional injuries.

## ELEVENTH CAUSE OF ACTION

*(42* U.S.C. §1983 Claim Against Defendant NASSAU COUNTY for Actions of the NCDAO)

197.    Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

198.    At the time of Plaintiffs original prosecution, and continuing until the dismissal of Plaintiffs case and his release from prison, NASSAU COUNTY DISTRICT ATTORNEY KATHLEEN RICE and ASSISTANT DISTRICT ATTORNEY PATRICK J. FINLEY, as employees and administrator of the NCDAO, a County agency, maintained a policy, custom and/or practice of deliberate indifference to violations by his employees of the constitutional rights of individuals who were investigated and criminally prosecuted in Nassau County, including, but not limited to, abuse of process, manufacturing of false evidence and testimony,

41

*Brady* violations, reliance on false or misleading evidence and argument at trial ("the policy"), and covering up the same.

199.  The policy permits, encourages, or acquiesces in the commission of, constitutional violations of the rights of suspects and Defendants by prosecutors, detective-investigators, and NCPD detectives working with the NCDAO, particularly in high profile or serious cases where arrest and conviction is most desired by the Office. The policy led directly to the violations of Plaintiffs constitutional rights before and during his trial, his wrongful conviction, and the subsequent cover-up of police and prosecutors' wrongdoing, which greatly prolonged Plaintiffs wrongful imprisonment and other damages.

200.  More specifically, it was the policy of RICE to directly encourage, or be indifferent to and there by indirectly encourage, prosecutors, detective-investigators, and NCPD detectives working with them to abuse lawful process to in giving inherently unreliable or false testimony favorable to the prosecution.

201.  It was RICE's policy to tolerate, and thereby encourage, violations of her

office's constitutional obligation to make timely disclosure to the defense of exculpatory or impeachment information known as *Brady* material. Her deliberate indifference to such violations created an "anything goes" atmosphere that caused such violations to continue, including in Plaintiff's case.

202. RICE's prosecutors were permitted and/or encouraged to withhold evidence relating to the inconsistencies of the "police stop" and information surrounding the operation of FEB and the integrity of its tests, tending to prove a Defendant's innocence, unless they "believed"

42

such evidence, thus depriving the defense and the jury of vital information, required to be disclosed under *Brady,* that was necessary to evaluate witnesses' credibility and Defendants' guilt or innocence.

203. While prosecutors were told in theory to comply with their *Brady* obligations, they were not told there would be any negative consequence to them if they failed to, and in fact there was none.

204. Upon information and belief, RICE had no employee handbook, manual, or other document setting forth any disciplinary process for such misconduct, or potential sanctions for them.

205. The foregoing violations of Plaintiff's federal constitutional rights and resultant injuries were directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendant NASSAU COUNTY, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, subject to prosecution by the NCDAO, namely:

a)      the institution and implementation of plainly inadequate or unlawful policies, procedures, regulations, practices and/or customs concerning:

i.      the duty not to use false, misleading or unreliable evidence, testimony, statements or argument during criminal proceedings, including bail hearings, pretrial hearings, and trial;

ii.     the continuing obligation to correct false, inaccurate, incomplete or misleading evidence, testimony, statements and argument, whenever such misconduct is discovered to have occurred, including moving or consenting to overturn convictions discovered to have been obtained through such unconstitutional means;

iii.    the continuing duty to obtain, to preserve, and to make timely disclosure to the appropriate parties, including the court and the defense, during criminal investigations and prosecutions, of all material evidence or information favorable to a person suspected, accused or convicted of

43

criminal conduct, including exculpatory evidence as well as evidence impeaching the credibility or undercutting there liability of prosecution witnesses, and including verbal as well as recorded information; and

iv.    the duty to refrain from abusing court process or otherwise coercing or manufacturing false or inherently unreliable statements and testimony from witnesses;

b)    the failure to adequately instruct, train, supervise, and discipline their employees with respect to such matters.

206.    The aforesaid deliberate or *defacto* policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendant NASSAU COUNTY, including, but not limited to, the District Attorney of Nassau County and her delegates, who knew:

a)    to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

b)    that such issues either present employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of employees mishandling such situations as well as the incentives that employees have to make the wrong choice; and

c)    that the wrong choice by municipal employees concerning such issues will frequently cause the deprivation of the constitutional rights of an accused and cause him constitutional injury.

207.    The aforementioned policy making officials had the knowledge alleged in the preceding paragraph, based upon, among other circumstances:

a)    as noted above, numerous credible allegations, many  substantiated by judicial decisions, that police officers and ADAs, had wrongfully withheld, lost, or destroyed evidence favorable to the defense that the prosecution had been

44

required to timely disclose to the defense under *Brady,* had presented or failed to correct false or misleading testimony and argument, and/or had abused judicial process to obtain inherently unreliable statements or testimony from witnesses;

b)      civil lawsuits, some of which resulted in substantial civil settlements, alleging that police and/or ADAs had falsified,   exaggerated, or withheld evidence, thereby wrongfully injuring individuals suspected or accused of crime;

c)      numerous decisions of the United States Supreme Court, the United States Court of Appeals for the Second Circuit, the New York Court of Appeals, and the New York Appellate Divisions, discussing the difficult issues that regularly  arise under the *Brady* rule and the failures of Nassau County or Nassau County prosecutors to comply with that rule;

d)      the inherent obviousness of the need to train, supervise and discipline ADAs in the aforementioned constitutional obligations to counteract the inherent pressure on prosecutors to obtain convictions.

208.    Despite this knowledge, the supervisory and policymaking officers and officials of the

Defendant NASSAU COUNTY perpetuated, or failed to take preventative or remedial measures

to terminate, said policies, procedures, regulations, practices and/or customs, did not effectively

instruct, train and/or supervise their personnel with regard to the proper constitutional and

statutory requirements in the exercise of their authority, had no employee handbook or other

published practices, policies or procedures for investigating and disciplining prosecutors  who

had engaged in *Brady* violations and related constitutional violations, and did not discipline or

otherwise properly supervise the individual personnel who engaged in such practices, but instead

sanctioned or tolerated the policies, procedures, regulations, practices and/or customs, described

above, with deliberate indifference to the effect of said policies, procedures, regulations,

practices and/or customs upon the constitutional rights of residents and citizens of the County of

Nassau in State of New York.

45

209.    The aforesaid policies, procedures, regulations, practices and/or customs of Defendant NASSAU COUNTY was collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiffs rights under the Constitution and Laws of the United States and in causing his damages.

210.  Under the principles of municipal liability for federal civil rights violations, the District Attorney of Nassau County (or her authorized delegates) has final managerial responsibility for training, instructing, supervising and disciplining attorneys and other employees in his office regarding their conduct in the prosecution of criminal matters, including, but not limited to, their obligations not to coerce witnesses or manufacture false or unreliable "evidence, " not to abuse judicial process, to make timely disclosure of exculpatory evidence or *Brady* material to the defense, including post-trial, and to refrain from offering, and to correct,  false or misleading evidence, testimony, and argument during pretrial, trial, and post-trial proceedings.

211.  The Nassau County District Attorney, personally and/or through her authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision and discipline, with respect to her office's performance of its duties.

212.    The District Attorney of Nassau County at all relevant times was and is an elected officer of Nassau County, and the office was and is funded out of the County's budget.

213.  Furthermore, the District Attorney was and is designated a "local officer," rather than a "state officer," under the New York Public Officers Law (§2); and New York has provided by statute (N.Y. County Law §§53,941) that the Defendant NASSAU COUNTY itself, shall have

46

liability for torts committed by County officers and employees, such as the District Attorney and her assistants.

214. The District Attorney of Nassau County personally and/or through her authorized delegates, at all relevant times had final authority, and constituted a County policymaker for whom the County is liable, with respect to the above-mentioned areas.

215. During all times material to this Complaint, the NASSAU COUNTY, through its policy makers, owed a duty to the public at large and to Plaintiff, which such policymakers knowingly and intentionally breached, or to which they were deliberately indifferent, to implement policies, procedures, customs and practices sufficient to prevent, deter, and avoid conduct by their subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

216. By virtue of the foregoing, Defendant NASSAU COUNTY is liable for having substantially caused the foregoing violations of Plaintiffs constitutional rights and his resultant injuries.

## TWELVETH CAUSE OF ACTION

(42 U.S.C. §1983; Denial of Due Process under the Fifth, Sixth and Fourteenth Amendments; Denial of Civil Rights under the Fourth, Fifth, Eighth and Fourteenth Amendments; Cruel and unusual punishment; Defendants NASSAU COUNTY, FORD, HARDY, DALEY, NCSDCD)

217. Plaintiff repeats and realleges each and every allegation contained above as though set forth at length herein.

218. The COUNTY OF NASSAU and NCSDCD while acting under color of law, deprived Plaintiff of his civil rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution when they subjected him to cruel and unusual punishment and acted

with deliberate indifference and reckless disregard toward Plaintiff's right to be free from unreasonable seizures, and afforded due process of law and by, among other things, the following acts:

> a) Placing Plaintiff in an area with inmates and officers who were extremely confrontational, without watching, monitoring or protecting Plaintiff;
>
> b) Placing Plaintiff in an area with inmates and officers, under circumstances which were conducive to the eruption of violence;
>
> c) Causing Plaintiff to remain in the area with confrontational and combative inmates and Officers when Defendants knew, or should have known, that altercations had erupted, further violence was imminent, and Plaintiff appeared to be injured.
>
> d) Not observing or protecting Plaintiff, or otherwise standing by and allowing brutal attacks on Plaintiff to continue for an unreasonable period of time, resulting in unnecessary and severe injury to Plaintiff.
>
> e) Withholding food or forcing Plaintiff to consume food to which he has a known allergy.
>
> f) Denying Plaintiff access to medical attention when necessary regarding his food allergy or back pain associated with the physical attacks of inmates or Defendants.

219. Plaintiff is informed and believes that NCSDCD Officers were aware of the threat to Plaintiff based concurrent combative and aggressive behavior and harassment by OFFICERS. NCSDCD officers intentionally, recklessly and with deliberate indifference, failed to take any security measures to protect arrestees from violent assault and battery.

220. Plaintiff was denied the minimal civilized measure of life's necessities and was not given proper nutrition to remain healthy. Defendants and NCSDCD personnel demonstrated a deliberate indifference to inmate health and safety, knowing of Plaintiff's food allergy and disregarded such, causing an excessive risk to Plaintiff's health and safety.

221.   The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order.   The above acts and omissions were consciously chosen from among various alternatives.

222.   At all times relevant here, the NASSAU COUNTY and the individual Defendants were present and were charged with the constitutional duties of protection of Plaintiff and were charged with the duty to not knowingly, with wanton disregard, cause his life, health and safety to be placed in danger by intentionally and/or deliberately ignoring the known dangers to Plaintiff that their actions and/or omissions placed him in.

223.   Each Defendant had ample and reasonably sufficient time and opportunity to so intervene and prevent Plaintiff's injuries, and was compelled to do so under the laws of the State of New York and under the Constitution of the United States of America.   In deliberate indifference to the life and welfare of Plaintiff, each said Defendant intentionally and with deliberate indifference to the civil rights of Plaintiff, refrained from intervening in the acts leading to Plaintiff's injuries.

224.   As a result thereof, Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution were violated.   As a further result thereof Plaintiff sustained the injuries and damages alleged herein.

225.   The conduct of the NASSAU COUNTY, FORD, HARDY, DALEY and OFFICERS OF THE NASSAU COUNTY SHERRIFS DEPARTMENT, CORRECTIONS DIVISION was intentional, malicious, willful, wanton and in reckless disregard of Plaintiff's constitutional rights and/or grossly negligent in that this conduct shocks the conscience and is fundamentally

49

offensive to a civilized society, so as to justify the imposition of punitive damages on the individual Defendants.

## THIRTEENTH CAUSE OF ACTION

*(42* U.S.C.§1983 Claim against Defendant NASSAU COUNTY for actions of the NCSDCD)

226.    Plaintiff repeats and realleges each and every allegation contained above as though set forth at length herein.

227.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendants COUNTY OF NASSAU, FORD, HARDY, DALEY and OFFICERS OF THE NASSAU COUNTY SHERRIFS DEPARTMENT, CORRECTIONS DIVISION , with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

> a)    failing to adequately train, supervise, and control custodians of jail inmates in the proper recognition of dangerous inmates and violent situations.
>
> b)    failing to adequately train, supervise, and instruct custodians of jail inmates in properly monitoring, deterring, controlling and responding to inmate altercations and violence.
>
> c)    failing to establish policies and procedures that enable identification and separation of inmates from certain officers, other inmates, detainees or arrestees.
>
> d)    failing to adequately train, supervise and control custodians of jail inmates in the proper response to threats of violence.
>
> e)    failing to maintain video surveillance of inmate areas to insure safety of inmates.
>
> f)    failing to establish policies and procedures to reduce the risk of inmate injury by providing for immediate response to inmate violence or threats of violence.
>
> g)    failing to provide adequate nutrition for inmates with special dietary needs and preventing inmates from consulting with a nutritionist or dietician to assess possible solutions to nutritional issues.

50

h) failing to properly assess and evaluate legitimate medical claims of inmates and allowing inmates to seek medical attention when necessary.

228. As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as proved and as more specifically stated above.

229. At all times mentioned herein and prior thereto, Defendants NASSAU COUNTY, FORD, HARDY, DALEY and OFFICERS OF THE NASSAU COUNTY SHERRIFS DEPARTMENT, CORRECTIONS DIVISION had a duty to train, instruct, supervise and discipline their subordinates to assure they respected and did not violate constitutional and statutory rights of inmates, and to objectively investigate violations of said prisoners' rights, including, but not limited to, the right to be free of infliction and cruel and unusual punishment by torture and the right to be safe and protected from injury while in Defendants' custody, under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

230. Plaintiff is informed and believe, and thereupon allege, that prior to the incidents alleged herein, individual Defendants and NASSAU COUNTY facilitated, permitted, ratified and condoned similar acts of inmate assaults and the intentional neglect of inmates necessary medical needs, and were deliberately indifferent to the health and safety of inmates in general and Plaintiff in particular. Said Defendants knew, or should have reasonably known, of this practice, pattern or policy of constitutional violations, and additionally, of the existence of facts and situations which created the potential of unconstitutional acts, and had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to other persons, but failed to do so.

231. As a result thereof, Plaintiff' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution were violated. As a further result thereof, Plaintiff sustained the injuries and damages alleged herein.

51

232.    The conduct of the individual Defendants mentioned herein, in their individual capacities, was intentional, malicious, willful, wanton and in reckless disregard of Plaintiff' constitutional rights and/or grossly negligent in that this conduct shocks the conscience and is fundamentally offensive to a civilized society, so as to justify the imposition of punitive damages on these Defendants in their individual capacity.

## FOURTEENTH CAUSE OF ACTION

(Negligent Hiring, Training and Supervision under State Law; Defendant NASSAU COUNTY)

233.    Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

234.    By virtue of the foregoing, Defendant COUNTY OF NASSAU is liable to Plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the NCPD, NCDAO and NCSDCD with regard to their aforementioned duties.

## DAMAGES DEMAND

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

   a.    For compensatory damages of not less than $50 million;

   b.    For punitive damages against the individual Defendants of $100 million;

   c.    For reasonable Attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C.§1988 and to the inherent powers of this Court;

   d.    For pre-judgment interest as allowed by law; and

   e.    For such other and further relief as this Court may deem just and proper.

Dated: April 5, 2013
       New York, New York

ANDREW C. LAUFER
Attorney for Plaintiff
Law Office of Andrew C. Laufer, PLLC
255 West 36th Street, Suite 1104
NewYork,NewYork10018
(212)422-1020(Phone)
(212)422-1069(Fax)


To:
COUNTY OF NASSAU
Attn: Office of the Nassau County Attorney
1 West Street
Mineola, New York 11501
516-571-3056

NASSAU COUNTY POLICE DEPARTMENT
1490 Franklin Avenue
Mineola, New York 11501

SERGEANT DAVID VEVERKA, SHIELD # 1495
Nassau County Police Department, Seventh Precinct
3636 Merrrick Road
Seaford, New York 11783

POLICE OFFICER DAVID TAIT, SHIELD # 1471
Nassau County Police Department, Seventh Precinct
3636 Merrrick Road
Seaford, New York 11783

SERGEANT BURTON A. FRIED
Nassau County Police Department, Seventh Precinct
3636 Merrrick Road
Seaford, New York 11783

DETETIVE THOMAS STORZ
NASSAU COUNTY POLICE DEPARTMENT
1490 Franklin Avenue
Mineola, New York 11501

53

DETECTIVE JASON PINSKY, SHIELD # 7908 OF THE FORENSIC EVIDENCE BUREAU
NASSAU COUNTY POLICE DEPARTMENT
1490 Franklin Avenue
Mineola, New York 11501

KATHLEEN RICE
NASSAU COUNTY DISTRICT ATTORNEY
262 Old Country Road
Mineola, New York 11501
516-571-3800

PATRICK J. FINLEY
ASSISTANT DISTRICT ATTORNEY
262 Old Country Road
Mineola, New York 11501
516-571-3800

COMMISSIONER FORD
100 Carman Avenue
East Meadow, New York 11554

CORPORAL HARDY
NASSAU COUNTY CORRECTIONAL CENTER
100 Carman Avenue
East Meadow, New York 11554

CORRECTION OFFICER DALEY
NASSAU COUNTY CORRECTIONAL CENTER
100 Carman Avenue
East Meadow, New York 11554

NASSAU COUNTY SHERIFFS DEPARTMENT, CORRECTIONS DIVISION
100 Carman Avenue
East Meadow, New York 11554